**In re STHRAN, Relator.**

**No. 05–10–01176–CV.**

Court of Appeals of Texas, Dallas.

Oct. 29, 2010.

Steven E. Couch, Kelly, Sutter & Kendrick, PC, Houston, TX, Eric H. Marye, The Marye Firm, Dallas, TX, for Relator.

Lori D. Proctor, Savrina R. Karels, Johnson, Trent, West & Taylor, L.L.P., Houston, for Real Party in Interest.

Before Justices MOSELEY, LANG, and MYERS.

## OPINION

Opinion By Justice LANG.

In this original proceeding, relator Etta Sthran seeks a writ of mandamus ordering the trial court to vacate the portion of its March 29, 2010 "Order Granting in Part Motion to Compel Arbitration and Motion to Dismiss or Stay" that orders arbitration of relator's individual claims against real party in interest "Forest Lane Healthcare Center and THI of Texas at Forest Lane, LLC" ("Forest Lane").[1] For the reasons below, we conclude (1) the trial court abused its discretion by ordering relator's individual claims to arbitration because the arbitration clause at issue is not in compli-

---

1. While the trial court's March 29, 2010 order names "Forest Lane Healthcare Center and THI of Texas at Forest Lane, LLC" as "Defendants," those same "defendants" are identi- fied elsewhere in the record as "THI of Texas at Forest Lane, LLC d/b/a Forest Lane Healthcare Center." We refer to those "defendants" in the singular in this opinion.

ance with state law, which is applicable here, and (2) relator has no adequate remedy by appeal. We conditionally grant the writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2004, relator's husband, Sam Sthran Jr. ("Mr. Sthran"), was admitted to Forest Lane for nursing care. At that time, relator signed Forest Lane's "Admission Contract" (the "contract") on a signature line labeled **"Fiduciary Party (if any)"** (emphasis original). The contract was not signed by Mr. Sthran. The contract contained, *inter alia*, the following provision:

> Pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of any kind (*e.g.*, whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of healthcare services, any agreement between the parties, the provision of any other goods or services by [Forest Lane] or other transactions, contracts or agreements of any kind whatsoever, any past, present or future incidents, omissions, acts, errors, practices, or occurrence causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, or any other aspect of the past, present, or future relationships between the parties shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").

Following Mr. Sthran's death in 2008, relator, individually and as surviving spouse and representative of Mr. Sthran,

filed suit against Forest Lane on December 3, 2009.[2] In her petition, relator alleged in relevant part that "negligent acts and omissions" of Forest Lane caused damages to Mr. Sthran during his lifetime and also were a proximate cause of his death. Relator claimed damages pursuant to the "Texas Wrongful Death Statute" and the "Texas Survival Statute."

Forest Lane responded with an answer and general denial on December 30, 2009. In its answer, Forest Lane asserted as an affirmative defense that "the disputes at issue in this lawsuit are governed by a valid and enforceable arbitration agreement." On January 25, 2010, Forest Lane filed a motion to compel arbitration and dismiss, or, in the alternative, stay proceedings. In that motion, Forest Lane asserted, in part, "Since Plaintiffs' claims are covered by the Arbitration Agreement executed by Etta Sthran, Defendant requests that the Court enforce the agreement and compel arbitration in accordance with the Federal Arbitration Act ("FAA") and dismiss, or, in the alternative, stay this lawsuit pending the arbitration."

Relator filed a response to Forest Lane's motion on March 15, 2010. In that response, relator contended Forest Lane's motion should be denied for two independent reasons: (1) because Forest Lane has "failed to prove-up" relator's legal authority to make healthcare and legal decisions for Mr. Sthran "such that she could waive a jury trial and agree to arbitrate all disputes on his behalf," the arbitration provision in the contract is unenforceable and (2) the arbitration provision fails to satisfy the notice requirements of Texas Civil Practice and Remedies Code section 74.451, which addresses agreements to ar-

---

**2.** Jacqueline Estelle, a daughter of the deceased, was also named as a plaintiff in the December 3, 2009 petition. Estelle is not involved in this mandamus proceeding.

bitrate health care liability claims.[3] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.451 (West 2005). Further, relator asserted that if Forest Lane contends section 74.451 is preempted by the FAA, the McCarren–Ferguson Act ("MFA") "reverse preempts the FAA." Relator argued

> Specifically, the MFA prohibits the federal preemption of any state law which was/is enacted for the purpose of regulating insurance and Texas courts have held that Chapter 74 and Section 74.451 (and its predecessor Article 4590i) were enacted for the purpose of regulating insurance and as such, cannot be preempted by federal law. Therefore, Section 74.451 *cannot* be preempted by the FAA and because the arbitration provision does not meet the Section 74.451 notice requirements, the provision cannot be enforced.

(emphasis original).

On March 18, 2010, Forest Lane filed a reply in which it asserted, *inter alia,* that "[t]he Texas Supreme Court has held that the lack of compliance with a Texas statute, *i.e.* the failure to comply with Chapter 74 of the Texas Civil Practice and Remedies Code, does not invalidate an arbitration agreement governed by the FAA because preemption exists." Additionally, Forest Lane contended the arbitration agreement is valid and enforceable because relator either (1) signed the arbitration agreement on behalf of her husband, or (2) signed the arbitration agreement in her individual capacity.

Following a hearing, the trial court signed an "Order Granting in Part Motion to Compel Arbitration and Motion to Dismiss or Stay" dated March 29, 2010. The trial court stated in relevant part in that order

Claims being brought by Plaintiff Etta Sthran for her individual damages and not derivative of the claims of Sam Sthran or of his estate of [sic] are, accordingly, ORDERED to arbitration (pursuant to the terms of the Admission Contract/Arbitration Agreement executed on February 13, 2004, between Forest Lane and Etta Sthran); AND prosecution of said claims in this case are STAYED pending the conclusion of arbitration.

Any additional relief requested in the Motion not herein granted is hereby Denied.

(emphasis original). This mandamus proceeding followed.

## II. RELATOR'S ENTITLEMENT TO MANDAMUS RELIEF

### A. Applicable Law

Mandamus will issue if the relator establishes a clear abuse of discretion for which there is no adequate remedy by appeal. *In re Odyssey Healthcare, Inc.,* 310 S.W.3d 419, 422 (Tex.2010) (orig.proceeding); *In re Deere & Co.,* 299 S.W.3d 819, 820 (Tex.2009) (orig.proceeding); *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig.proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex.2005) (orig.proceeding); *In re Tex. Am. Express, Inc.,* 190 S.W.3d 720, 723 (Tex.App.-Dallas 2005, orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer,*

---

**3.** The record shows relator filed a "Notice of Filing and Service of Tex. Civ. Prac. & Rem. Code § 74.351 Expert Reports and Curricu- lum Vitae" on March 24, 2010. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (West Supp. 2010).

827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Thus a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Id.; see also In re Tex. Am. Express,* 190 S.W.3d at 724.

■ "There is no definitive list of when an appeal will be 'adequate,' as it depends on a careful balance of the case-specific benefits and detriments of delaying or interrupting a particular proceeding." *In re Gulf Exploration, LLC,* 289 S.W.3d 836, 842 (Tex.2009) (orig.proceeding); *see also In re McAllen Med. Ctr., Inc.,* 275 S.W.3d 458, 468 (Tex.2008) (orig.proceeding) ("[T]he adequacy of an appeal depends on the facts involved in each case."). With respect to mandamus review of orders compelling arbitration, the supreme court has stated that "the balance will generally tilt toward reviewing orders compelling arbitration only on final appeal." *In re Gulf Exploration, LLC,* 289 S.W.3d at 843. However, the court has further stated

> In those rare cases when legislative mandates conflict, mandamus "may be essential to preserve important substantive and procedural rights from impairment or loss, [and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments."

*Id.* (quoting *In re Prudential Ins. Co.,* 148 S.W.3d at 136).

### B. Analysis

#### 1. Enforceability of Arbitration Provision

■ In the first of her three issues, relator contends the arbitration provision in the contract is unenforceable because it fails to satisfy the mandatory notice requirement of Texas Civil Practice and Remedies Code section 74.451. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.451. Relator asserts the notice requirement of section 74.451 applies because the MFA "reverse preempts" the FAA. Consequently, relator argues, the trial court abused its discretion by ordering relator's individual claims to arbitration.

Forest Lane argues the FAA applies in this case for two reasons: (1) the parties' relationship involves interstate commerce and (2) the "arbitration agreement" signed by relator invokes the FAA. According to Forest Lane, the FAA preempts the notice requirements of Chapter 74, thereby creating a valid and enforceable arbitration agreement between relator and Forest Lane. Forest Lane contends "the MFA does not reverse preempt the FAA because Chapter 74 of the Texas Civil Practice & Remedies Code was not enacted for the purpose of regulating insurance and it does not invalidate the intent of Chapter 74."

■ A party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence. *In re Kepka,* 178 S.W.3d 279, 286 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding), *disapproved in part on other grounds by In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 647 (Tex.2009) (orig.proceeding). Whether an enforceable agreement to arbitrate exists is a legal question. *Id.*

Chapter 74 of the Texas Civil Practice and Remedies Code is titled "Medical Liability." *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–74.507 (West, Westlaw through October 2010). Section 74.451 of that chapter provides, in relevant part,

> (a) No physician, professional association of physicians, or other health care provider shall request or require a patient or prospective patient to execute an agreement to arbitrate a health care liability claim unless the form of agree-

ment delivered to the patient contains a written notice in 10–point boldface type clearly and conspicuously stating:

UNDER TEXAS LAW, THIS AGREEMENT IS INVALID AND OF NO LEGAL EFFECT UNLESS IT IS ALSO SIGNED BY AN ATTORNEY OF YOUR OWN CHOOSING. THIS AGREEMENT CONTAINS A WAIVER OF IMPORTANT LEGAL RIGHTS, INCLUDING YOUR RIGHT TO A JURY. YOU SHOULD NOT SIGN THIS AGREEMENT WITHOUT FIRST CONSULTING WITH AN ATTORNEY.

*Id.* § 74.451(a).

The MFA provides, in pertinent part, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C.A. § 1012(b) (West, Westlaw through October 2010). The MFA will prevent a federal statute from preempting a state statute if (1) the federal statute at issue does not specifically relate to the "business of insurance," (2) the state law was enacted for "the purpose of regulating the business of insurance," and (3) the federal statute operates to "invalidate, impair, or supersede" the state law. *Kepka*, 178 S.W.3d at 288.

Here, Forest Lane does not argue, and the record does not show, that (1) the requirements of section 74.451(a) were met with respect to the arbitration provision at issue or (2) relator's claims are not "health care liability" claims. Rather, the parties dispute whether the analysis set forth in *Kepka* should be determinative in this case.

*Kepka* involved a relator who sued a nursing home for negligence in caring for her husband, who was deceased at the time suit was filed. *Id.* at 283–84. When the nursing home moved to compel arbitration in accordance with an agreement signed by the relator, she argued the arbitration agreement failed to comply with the notice requirement of section 15.01 of Revised Civil Statute article 4590i, the predecessor to section 74.451, which was then in effect. *Id.* at 287–88. The wording of the notice requirement of section 15.01 of article 4590i was identical to that of current section 74.451. *See* Act of May 25, 1993, 73rd Leg., R.S., ch. 625, § 4, 1993 Tex. Gen. Laws 2347, 2349–50, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.451). The nursing home argued the FAA preempted application of article 4590i, and relator argued the FAA was reverse preempted under the MFA. *Kepka*, 178 S.W.3d at 287–88. The appellate court concluded the MFA prevented the FAA from preempting the notice requirements of article 4590i. *Id.* at 290–92.

Relator asserts that pursuant to the analysis set forth in *Kepka*, the MFA reverse preempts the FAA in this case, and thus, the mandatory notice requirement of section 74.451 applies. Forest Lane "respectfully disagrees with the Court's finding in *Kepka* that Chapter 74 and its predecessor, article 4590i, 'regulates the business of insurance' within the meaning of the MFA." Forest Lane argues that "not one provision of Chapter 74 addresses insurance per se but rather regulates the procedural and substantive aspects of health care liability claims, which has the incidental impact of reducing claims and insurance premiums." In support of that position, Forest Lane cites Chapter 74. However, the court in *Kepka*, addressing a similar contention as to article 4590i, concluded that article, including its notice

provision in section 15.01, was a law enacted "for the purpose of regulating the business of insurance" because it " 'possess[ed] the end, intention, or aim of adjusting, managing, or controlling the business of insurance,' that is, the relationship between health-care insurers and their insured (health providers)." *Id.* at 291 (quoting *U.S. Dep't of the Treasury v. Fabe,* 508 U.S. 491, 505, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)); *see also Patterson v. Nexion Health, Inc.,* 2007 WL 2021326, at *3 (E.D.Tex.2007) (concluding section 74.451 was enacted for purpose of regulating insurance and MFA reverse preempts FAA with respect to section 74.451). Based on the analysis in *Kepka* regarding article 4590i, which was recodified as Chapter 74, *see Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 n. 1 (Tex.2005), we disagree with Forest Lane's position.[4] *Cf. Kepka,* 178 S.W.3d at 290–91 (discussing provisions of article 4590i and its purposes); Tex. Civ. Prac. & Rem.Code Ann. § 74.001 et seq.

Additionally, Forest Lane asserts that in *In re Nexion Health at Humble, Inc.,* 173 S.W.3d 67 (Tex.2005) (orig.proceeding), the Texas Supreme Court "found that the FAA would apply where Texas law imposes additional burdens on the formation of an arbitration agreement (*i.e., requiring an attorney to sign it to be 'enforceable '*)" (emphasis original). According to Forest Lane, *In re Nexion* is "controlling in this matter." However, the court in *In re Nexion* did not address whether the MFA prevents the FAA from preempting article 4590i or section 74.451. Further, in a supplemental opinion on motion for rehearing in that case, the supreme court stated

> On rehearing, the real party raised for the first time that the [FAA] is "reverse preempted" by the [MFA], citing for authority [*Kepka* ]. Because this issue has not been reviewed by the courts below, we decline to reach the issue and express no opinion as to the merits of this argument.

*Id.* at 70 (citations omitted). Consequently, we disagree with Forest Lane that *In re Nexion* is "controlling in this matter."

Finally, Forest Lane argues that "the United States Supreme Court has held that the FAA preempts state contractual requirements that apply only to arbitration clauses, which is what the notice requirements of Chapter 74 do." In support of that argument, Forest Lane cites *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The Supreme Court stated in that case that courts may not "invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id.* at 687, 116 S.Ct. 1652 (emphasis original). However, unlike this case, *Doctor's Associates* did not involve the issue of reverse preemption by another federal statute. *See id.* at 681, 116 S.Ct. 1652. Forest Lane cites no authority, and we have found none, for the proposition that reverse preemption by the MFA is precluded on the facts before us.

Assuming without deciding that the FAA could preempt the notice requirement of section 74.451, we conclude the MFA reverse preempts the FAA with re-

---

4. Although, as stated above, Forest Lane asserts "the MFA does not reverse preempt the FAA because Chapter 74 of the Texas Civil Practice & Remedies Code was not enacted for the purpose of regulating insurance and it does not invalidate the intent of Chapter 74," Forest Lane provides no argument or citation to authority regarding invalidation of the intent of Chapter·74. Accordingly, to the extent Forest Lane asserts a separate argument as to invalidation of the intent of Chapter 74, we conclude Forest Lane has waived that argument. *See* Tex.R.App. P. 52.4, 52.3(h).

gard to such notice requirement in this case. Accordingly, we conclude (1) the arbitration provision in this case is unenforceable and (2) the trial court abused its discretion by ordering relator's individual claims to arbitration.[5]

### 2. Adequate Remedy By Appeal

■ In her third issue, relator asserts she has no adequate remedy by appeal. Relator contends that if she is forced to arbitrate her claims, (1) she will "inevitably incur fees and expenses which she cannot recover through any contractual claim" and (2) the resolution of her claims in arbitration will ultimately be subject to a reversal due to the improperly conducted proceeding, thus resulting in the waste of substantial time, money, and resources. Further, relator asserts the Texas Legislature's purpose in enacting section 74.451 will be defeated because (1) she was improperly presented with an arbitration provision that did not contain any of the required written notice language and (2) she "will be forced to arbitrate against the mandate of Section 74.451." Forest Lane does not address the adequacy of relator's remedy by appeal.

"There is no definitive list of when an appeal will be 'adequate,' as it depends on a careful balance of the case-specific benefits and detriments of delaying or interrupting a particular proceeding." *In re Gulf Exploration,* 289 S.W.3d at 842. Further, the supreme court has stated that "[i]n those rare cases when legislative mandates conflict, mandamus 'may be essential to preserve important substantive and procedural rights from impairment or loss, [and] allow the appellate courts to give needed and helpful direction to the

law that would otherwise prove elusive in appeals from final judgments.'" *Id.* at 843 (quoting *In re Prudential Ins. Co.,* 148 S.W.3d at 136).

■ While the court in *Gulf Exploration* did not purport to establish a list of specific factors to balance respecting adequacy of an appeal, one of the factors considered in that case was that "[a] party that prevails on a contractual claim can recover its fees and expenses, even if they were incurred in collateral proceedings like arbitration." *Id.* at 843–44. Thus, delay and expense in cases in which arbitration clauses cover contractual claims "generally do not render a final appeal inadequate." *Id.* at 843. However, here the action involves claims sounding in tort, rather than contract claims. *See In re Lisa Laser USA, Inc.,* 310 S.W.3d 880, 884 (Tex.2010) (orig.proceeding) ("[A] claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law.") (quoting *In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672, 677 (Tex.2009) (orig.proceeding)). Thus, it is not clear that any fees and expenses incurred as a result of arbitration will be recoverable. Further, because this case is one of those "rare cases" when legislative mandates might be construed to conflict, mandamus will "preserve important substantive and procedural rights from impairment and loss, [and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *See Gulf Exploration,* 289 S.W.3d at 843; *see also In re McAllen Med. Ctr., Inc.,* 275 S.W.3d at 462 ("mandamus relief is available when the purposes of the

---

5. In light of our conclusions respecting relator's first issue, we need not address relator's second issue, in which she asserts, independently, that the trial court abused its discretion by finding that she signed the contract in her individual capacity. *See* Tex.R.App. P. 47.1.

health care statute would otherwise be defeated"). Therefore, we conclude relator lacks an adequate remedy by appeal in this case.

### 3. Timeliness of Relator's Petition for Writ of Mandamus

■ Finally, we address the contention of Forest Lane, in its response to relator's petition for writ of mandamus, that relator's petition for writ of mandamus is untimely and should be denied because it was filed nearly six months after the date of the trial court's order compelling the parties to arbitration. Forest Lane argues (1) it has been prejudiced by relator's delay in seeking appellate relief, as Forest Lane should already be moving forward with the individual claims of relator in the arbitration process and (2) relator can show no justification for her delay in waiting nearly six months to seek appellate relief. Therefore, Forest Lane asserts, relator's petition must be denied.

In a reply to Forest Lane's response, relator argues she has "amply explained the reasons for any delay." Specifically, relator asserts (1) because the parties agreed in May 2010 to participate in a mediation, "it would have made little sense" for relator to proceed with appellate relief prior to that mediation, (2) several weeks after the parties' June 2010 mediation proceeding, Forest Lane filed a motion to clarify the trial court's March 29, 2010 order, which could have affected the appellate relief sought by relator, and (3) relator filed her "first" petition for writ of mandamus less than two weeks after the trial court ruled upon Forest Lane's motion to clarify, but that "first" petition was "denied due to an issue with the Certification." Further, relator contends Forest Lane has made "*no showing* of any prejudice" (emphasis original).

■ Issuance of mandamus relief "is largely controlled by equitable principles." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex.2010) (orig.proceeding) (citing *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993) (orig.proceeding)). To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights, and also the moving party's good faith and detrimental change in position because of the delay. *Id.* Here, the record does not show Forest Lane has demonstrated a detrimental change in position between the time of the trial court's order and the filing of relator's mandamus petition. *See id.* Therefore, we cannot agree with Forest Lane's contention respecting the untimeliness of relator's petition.

### III. CONCLUSION

We conclude that because the arbitration provision at issue is unenforceable, the trial court abused its discretion by ordering relator's individual claims to arbitration. Further, we conclude relator lacks an adequate remedy by appeal. Therefore, we conditionally grant relator's petition for mandamus and order the trial court to (1) vacate its March 29, 2010 order granting, in part, the "MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS" of real party in interest and (2) render an order denying real party in interest's "MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS" in its entirety. The writ will issue only if the trial court fails to comply.