**Reversed and Rendered in part; and Remanded; Opinion Filed August 9, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01425-CV

**ACE CASH EXPRESS, INC., Appellant**
**V.**
**COURTNEY COX, Appellee**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-05455**

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Lang

In this interlocutory appeal, appellant, Ace Cash Express, Inc. ("ACE"), asserts the trial court erred in denying ACE's motion to compel arbitration. The underlying lawsuit was filed by Courtney Cox, appellee, based on alleged sexual harassment by an ACE employee and retaliation by ACE.

We decide in favor of ACE on its sole issue. We reverse the portion of the trial court's order denying ACE's motion to compel arbitration, render judgment ordering arbitration of Cox's claims against ACE, and remand this case to the trial court for further proceedings consistent with this opinion, including consideration of the grant of an appropriate stay.

## I. FACTUAL AND PROCEDURAL CONTEXT

Cox was employed by ACE as a "Center Manager." As part of her "new-hire paperwork," Cox signed an arbitration agreement dated February 7, 2012.[1] The agreement stated in a footnote that "[t]his Arbitration Agreement is effective December 1, 2011, and it replaces or modifies, as applicable, any previous dispute resolution agreements or arbitration agreements in effect prior to December 1, 2011."

On May 12, 2015, Cox sued ACE and James Medeiros, the District Manager of ACE and Cox's supervisor. Cox's petition asserted Medeiros had sexually harassed her, and she was "constructively discharged" by ACE on April 28, 2014 because she reported the sexual harassment. ACE filed a motion to compel arbitration on July 27, 2015 attaching the affidavit of Ginger Knight to its motion to compel,[2] which, in turn, attached a copy of the arbitration agreement of February 7, 2012.[3]

---

[1] The agreement states, in pertinent part:

In the event that differences arise involving legally recognized rights or obligations that cannot be resolved without the assistance of an outside party, you and ACE agree to resolve any and all claims, disputes, or controversies arising out of or relating in any way to your employment with ACE, including the termination of your employment, exclusively by arbitration to be administered by a neutral dispute resolution agency agreed upon by the parties at the time of the dispute. If you and ACE cannot agree, the American Arbitration Association ("AAA") will administer the arbitration pursuant to its applicable rules ("AAA Rules"). Copies of the AAA Rules are available on the AAA website (www.adr.org). Some, but not all, of the types of claims covered are: wrongful discharge; unpaid bonuses, wages, overtime, or other compensation; discrimination or harassment on the basis of race, sex, age, national origin, religion, disability or any other unlawful basis; breach of contract or other challenge to the at-will status of an employee; unlawful retaliation; employment-related tort claims such as defamation; and claims arising under any statutes or regulations applicable to employees or applicable to the employment relationship, such as the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Americans with Disabilities Act, or the Fair Labor Standards Act . . . You and ACE agree that this Agreement shall be enforceable pursuant to and interpreted in accordance with the Federal Arbitration Act ("FAA"). . . .

If any provisions of the AAA Rules and/or this Arbitration Agreement are determined by the Arbitrator or by any court of competent jurisdiction to be unlawful, invalid, or unenforceable, such provisions shall be severed or modified so that the Agreement may be enforced to the greatest extend permission under the law. *This Agreement may be modified or terminated by ACE after thirty days written notice to employees.* Any modifications or terminations shall be prospective only and shall not apply to any claims or disputes that are pending in arbitration or that have been initiated by either party.

***Special Note:*** *This Arbitration Agreement and the Rules referenced above are important documents that affect your legal rights. You should familiarize yourself with and understand them, and, by signing below, you acknowledge that you have had the opportunity to do so. You may wish to seek legal advice before signing this Arbitration Agreement.*

By acknowledging and signing below, and by continuing employment with ACE after the December 1, 2011 effective date of this Arbitration Agreement, you agree to be bound to this Arbitration Agreement, as does ACE. *You understand that, as more fully set forth above, you must arbitrate any and all employment-related claims against ACE and that you may not file a lawsuit in court in regard to any claims or disputes covered by this Arbitration Agreement.*

(Emphasis in original).

[2] That affidavit states:

Cox filed a motion to continue a hearing on the motion to compel arbitration set for August 5, 2015 until ACE responded to Cox's written discovery requests. The trial court granted Cox's motion to continue, and ordered ACE to provide Cox with copies of ACE's electronic employment policies. ACE produced its electronic employment policies on September 3, 2015.

ACE contends that in producing its electronic employment policies, ACE accidentally pulled from its archive certain employment policies that predated Cox's employment, including "Policy 100."[4] ACE claims it "promptly notified" Cox's counsel of this mistake on September 23, 2015. As indicated below, "Policy 100" became a matter of contention as to whether its language caused the arbitration agreement to be illusory. In 2011, prior to Cox's employment

---

1. My name is Ginger Knight. I am over the age of 21 years, and I have personal knowledge of the acts set forth in this Affidavit. I am the Human Resources Manager for the Dallas-Fort Worth Region of ACE Cash Express, Inc. ("ACE").
2. I have knowledge of and supervision over the personnel and human resources records for ACE employees in the Dallas-Fort Worth Region, located at 1231 Greenway Drive, Irving, Texas. I am responsible for the maintenance of all personnel files in the Dallas-Fort Worth Region in the regular course of business at ACE. The personnel records attached to this Affidavit are exact duplicates of the originals.
3. Plaintiff Courtney Cox was employed by ACE as a Center Manager. A copy of the Arbitration Agreement Ms. Cox executed is attached to this Affidavit as Attachment 1.
4. The Arbitration Agreement is a record kept by ACE in the regular course of business, and it is the regular course of business of ACE for an employee or representative of ACE, with knowledge of the event recorded, to make a record, and the record was made at the time of event.

[3] This arbitration agreement bore signatures purporting to be those of Cox and an ACE representative.

[4] Policy 100" provided, in pertinent part:

**POLICIES AND PROCEDURES HANDBOOK**

This Policies and Procedures Handbook is designed to acquaint you with the organization and provide information about working conditions, employee benefits and some of the policies affecting your employment. You should read, understand and comply with all provisions of the Policies and Procedures Handbook. It describes many of your responsibilities as an employee and outlines the programs developed by ACE to benefit employees. One of our objectives is to provide a work environment that is conducive to both personal and professional growth.

No Policies and Procedures Handbook can anticipate every circumstance or question about policies. Although the policies discussed in the Policies and Procedures Handbook have been developed to assist in day-today-activities and provide general guidelines, the Policies and Procedures Handbook is not intended to be a substitute for the judgment and discretion of ACE management personnel. Further, no statement set forth in the Policies and Procedures Handbook is intended as a commitment or obligation of ACE to any individual employee or group of employees. Circumstances may arise in which ACE determines that changes in these policies are required. *For this reason, ACE reserves the right, at any time, to modify, rescind or supplement any or all of the policies in the Policies and Procedures Handbook and to take actions that may be contrary to a policy set forth herein.*
. . .
Employees are expressly bound by and exclusively required to use the Employee Dispute Resolution process. Acceptance of this process, described in the "Employee Dispute Resolution" policy in this handbook, is a mandatory term and condition of employment. The Employee Dispute Resolution policy constitutes the only contractual relationship established by this handbook.

(Emphasis added).

with ACE, the "internal site" contained a link to "Policy 100" entitled "INTRODUCTION" and dated April 1, 2002.

According to ACE, in November of 2011, prior to Cox's employment with ACE, "Policy 100" was removed from ACE's electronic employment policies and replaced by a blank copy of the same arbitration agreement that the parties executed on February 7, 2012. ACE contends that at all times during Cox's employment with ACE, the blank arbitration agreement appeared rather than "Policy 100" when an ACE employee clicked the link labeled "Policy 100" on the "internal site." Additionally, ACE contends it provided Cox with "evidence" that "Policy 100" was replaced, including a sworn explanation of the error from an ACE representative, Susan Wells, ACE's Director of Human Resources.

On November 9, 2015, Cox filed an untimely response to ACE's motion to compel arbitration. Cox's response argued (1) the Texas Arbitration Act ("TAA") governs the Agreement, not the Federal Arbitration Act ("FAA"); (2) Cox's personal injury claims are not subject to arbitration under the TAA because the agreement is not signed by the parties' attorneys; (3) the agreement is illusory based on "Policy 100"; (4) the claims against Medeiros are not subject to the arbitration agreement; and (5) the arbitration agreement is unenforceable because it requires confidentiality. Additionally, Cox objected to the Knight affidavit in her response to ACE's motion to compel, stating, as to Knight's affidavit testimony that addressed the arbitration agreement of February 7, 2012, "Ms. Knight has not provided any familiarity with Plaintiff's signature. Tex. R. Evid. 901." On November 10, 2015, the trial court held a hearing on ACE's motion to compel, orally sustained Cox's objection to the Knight affidavit,[5] and denied ACE's motion. ACE timely appealed.

---

[5] The record does not contain an order signed by the trial court that references Cox's objection. However, the trial court stated on the record at the hearing on the motion to compel arbitration that Cox's objection "is sustained . . . on the evidentiary consideration about the signature."

## II. DENIAL OF ACE'S MOTION TO COMPEL ARBITRATION

### A. Standard of Review

"We review an order denying a motion to compel arbitration under an abuse of discretion standard." *Morford v. Esposito Sec., LLC*, No. 05–14–01223–CV, 2015 WL 5472640, at \*4 (Tex. App.—Dallas Sept. 18, 2015, no pet.) (mem. op.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding); *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.)). We defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *Id.* (citing *Labatt*, 279 S.W.3d at 643; *Sidley*, 327 S.W.3d at 863). A trial court abuses its discretion when it "refuses to compel arbitration under a valid and enforceable arbitration agreement." *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010). "Whether an arbitration agreement is enforceable is subject to de novo review." *Tex. Health Res. v. Kruse*, No. 05-13-01754-CV, 2014 WL 3408636, at \*1 (Tex. App.—Dallas 2014, pet denied) (citing *Labatt*, 279 S.W.3d at 643).

We review a trial court's decision to admit evidence over objection under an abuse-of-discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

### B. Applicable Law

Texas Rule of Evidence 901(a) provides for authentication of evidence, and states, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Rule 901(b) provides "examples" of "evidence that satisfies the requirement" of 901(a). One such "example" is identified in subsection (b)(10) which states

evidence may be authenticated by "[a]ny method of authentication or identification provided by statute or by other rule prescribed pursuant to statutory authority." TEX. R. EVID. 901(b)(10).

Texas Rule of Evidence 803 identifies statements and documents that are not excluded by the hearsay rule even though the declarant is available as a witness. *See* TEX. R. EVID. 803.[6] Rule 803(6) is one of the enumerated categories which provides "a record of an act, event, condition, opinion or diagnosis" is not excluded by the hearsay rule if:

> (A) the record was made at or near the time by–or form information transmitted by–someone with knowledge;
> (B) the record was kept in the course of a regularly conducted business activity;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and
> (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

TEX. R. EVID. 803(6).

Under Texas law, "A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists." *Id.* "If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration." *Id.* A court has no discretion and must compel arbitration if it is established that there is a valid arbitration agreement and the claims raised fall within the scope of that agreement. *See Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 177 (Tex. App.—Dallas 2013, no pet.).[7] We construe the scope of an unambiguous arbitration agreement as a

---

[6] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (citing TEX. R. EVID. 801(d)). Hearsay evidence is not generally admissible. TEX. R. EVID. 802.

[7] Federal arbitration law imposes a similar burden on the movant seeking to compel arbitration to prove the existence of a valid arbitration agreement. "When considering a motion to compel arbitration under the FAA, a court employs a two-step analysis." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). "First, a court must "determine whether the parties agreed to arbitrate the dispute in question." *Id.*; *see*

matter of law. *See Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, pet. denied).

"Although the Texas Supreme Court has 'repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.'" *Weekly Homes, L.P. v. Rao*, 336 S.W.3d 413, 419 (Tex. App.—Dallas 2011, pet denied) (quoting *J.M. Davidson, Inc.*, 128 S.W.3d at 227). "[W]hen we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement." *Wright v. Hernandez*, 469 S.W.3d 744, 751 (Tex. App.—El Paso 2015, no pet.) (citing *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 814 (Tex. App.—El Paso 2014, no pet.)).

"Authenticity is a prerequisite to admissibility." *Id.* "Simply attaching a document to a pleading neither makes the document admissible as evidence, dispenses with proper foundational evidentiary requirements, or relieves a litigant of complying with other admissibility requirements." *Id.* (citing *United Rentals Inc.,* 445 S.W.3d at 814). "A document may only be considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirements of self-authentication as set out in Tex. R. Evid. 902." *Id.* Where an arbitration agreement is not a self-authenticating document under Rule 902, the party seeking to enforce that agreement is "required to provide a sponsoring witness to vouch for its authenticity." *Id.*

Arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Under Texas law, a contract must be based upon a valid consideration or mutuality of obligation. *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex.

---

*also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). "Second, a court must determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 628).

App.—Corpus Christi–Edinburg 2003, orig. proceeding). Consideration may consist of either benefits or detriments to the contracting parties. *Id.* When there is no consideration and "illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract." *Id.* (citing *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994)). A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *See id.* An arbitration agreement may not be enforceable if it is illusory. *See id.*

"An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R*, 324 S.W.3d at 567. If an employer can unilaterally modify or terminate the purported arbitration agreement without prior notice to an employee, that agreement is based upon an illusory promise and thus not enforceable. *Weekly Homes, L.P.*, 336 S.W.3d at 419 (purported agreement was unenforceable because employer retained "unilateral power, at any time, to elect not to enforce any policy or provision in the Handbook," including arbitration provision); *In re C & H News Co.*, 133 S.W.3d at 647 (purported agreement was unenforceable because employer "retain[ed] the ability to pick and choose the claims it[ ] want[ed] to arbitrate"). Documents, such as employee handbooks, incorporated into a contract by reference become part of that contract. *See In re 24R*, 324 S.W.3d at 567. However, "even if a party has the right to unilaterally modify or terminate an arbitration clause, if the modification or elimination of the clause does not apply retroactively so as to allow the party to avoid the promise to arbitrate, the arbitration clause is not illusory." *Budd v. Max Intern., LLC*, 339 S.W.3d 915, 920 (Tex. App.—Dallas 2011, no pet.).

"Arbitration of disputes is strongly favored under federal and state law." *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Passage of the FAA was "motivated, first

and foremost, by a congressional desire to enforce agreements into which parties had entered." *Nafta Traders Inc. v. Quinn*, 339 S.W.3d 84, 98 (Tex. 2011) (internal quotation omitted). "The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration "*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *Id.* (citing *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (emphasis in original)).

Proponents of arbitration "stress that confidentiality is critical to the success of the process." *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 173 (Tex. App.—Dallas 2009, no pet.). "Without a guarantee of confidentiality, parties may be reluctant to speak freely or address the heart of their dispute." *Id.* It is for these reasons that the Texas Legislature has directed that communications made in connection with arbitration are entitled to confidentiality. *See* TEX. CIV. PRAC. & REM. CODE ANN. 154.073. "Further, '[u]nless the parties agree otherwise, all matters, including the conduct and demeanor of the parties and their counsel during the settlement process, are confidential and may never be disclosed to anyone, including the appointing court.'" *In re Empire Pipeline Corp.*, 323 S.W.3d 308, 312–315 (Tex. App.—Dallas 2010, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE ANN. 154.053(c)).

"The Federal Arbitration Act applies to arbitration clauses in contracts that affect interstate commerce." *Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513, 517 (Tex. 2015) (citing 9 U.S.C. § 2). Parties in Texas may also expressly agree to arbitrate under the FAA. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011). When parties agree that the FAA shall govern their arbitration agreement, it is not required that the party seeking to compel arbitration show that the agreement involved interstate commerce. *See id*. When the FAA applies to arbitration clauses of litigants in Texas, it preempts the TAA only to the extent the two are contrary. *Id.* (citing *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477–78 (1989)).

The supreme court has held the FAA preempts the TAA requirement that an attorney sign a client's agreement to arbitrate a personal injury claim. *Id.* (citing *In re Nexion Helath at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (per curiam)). "This was because the TAA required an additional element–the attorney's signature–that the FAA did not, and the laws were in direct conflict." *Fredericksburg Care Co., L.P.*, 461 S.W.3d at 518 (citing *In re Nexion Helath at Humble, Inc.*, 173 S.W.3d at 69).

### C. Application of Law to the Facts

In its sole issue on appeal, ACE asserts the trial court abused its discretion by denying ACE's motion to compel arbitration. Specifically, ACE contends (1) a valid and enforceable agreement to arbitrate exists that encompasses all of Cox's claims in this suit; and (2) the trial court erred in sustaining Cox's objection to Knight's affidavit authenticating the arbitration agreement because Cox did not file a verified pleading or otherwise contest her signature on the arbitration agreement. Cox contends that ACE did not prove the existence of a valid agreement to arbitrate because (1) the arbitration agreement is illusory in that ACE has the right to modify or rescind the agreement at any time; (2) the arbitration agreement is unenforceable as it requires confidentiality contrary to Texas public policy; (3) the Texas Arbitration Act, rather than the Federal Arbitration Act, governs the arbitration agreement; and as a result, the agreement is unenforceable because Cox asserts personal injury claims and Cox's attorney did not sign the agreement as required by the Texas Arbitration Act; and (4) claims against James Medeiros are not subject to the arbitration agreement.[8] After a hearing, the trial court signed an order generally denying ACE's motion to compel arbitration. No reasons were stated. Because the trial court's

---

[8] Cox argues "[t]here is no arbitration agreement between [Cox] and Medeiros. Thus, there is no basis to move such claims between [Cox] and Medeiros to arbitration." However, we note that Medeiros, a co-defendant with ACE in the trial court, did not file a notice of appeal of the trial court's order denying ACE's motion to compel arbitration. As such, Medeiros is not a party to this appeal. *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."). Because Medeiros is not a party to this appeal, we will not address whether Cox's claims against him are within the scope of the arbitration agreement. *Trulock v. City of Duncanville*, 277 S.W.3d 920, 924 (Tex. App.—Dallas 2009, no pet.) (an issue on appeal is moot where a party seeks judgment which, when rendered, cannot have any practical legal effect on a then-existing controversy).7

–10–

order denying ACE's motion to compel stated no reasons for the ruling, we address ACE's arguments and those raised by Cox as obstacles to enforcement of the arbitration agreement.

## 1. Authentication of the Arbitration Agreement

In the second part of its issue, ACE asserts that the trial court erred by denying its motion to compel arbitration when it sustained Cox's objection to Knight's affidavit authenticating the arbitration agreement where "Cox did not file a verified pleading or otherwise contest her signature on the agreement." This point is raised in the context of the affidavit of Ginger Knight of ACE that was attached to the motion to compel arbitration. Knight stated, in part, she was the "Human Resources manager for the Dallas-Fort Worth region of ACE. . . ." Further, she stated she had "knowledge of and supervision over the personnel and human resources records for ACE employees" in her region and is responsible "for the maintenance of all personnel files in the . . . regular course of business at ACE. Additionally, she testified, "[t]he personnel records attached to this Affidavit are exact duplicates of the originals." Then, Knight identified "a copy of the arbitration agreement Ms. Cox executed" as the attachment to her affidavit. Finally, Knight stated, "The Arbitration Agreement is a record kept by ACE in the regular course of business, and it is the regular course of business of ACE for an employee or representative of ACE, with knowledge of the event recorded, to make a record, and the record was made at the time of event."

In seeking to compel arbitration, ACE was required to authenticate the arbitration agreement. *See Wright v. Hernandez*, 469 S.W.3d at 752; *see also United Rentals, Inc.*, 445 S.W.3d at 814. *Cf. J.M. Davidson, Inc.*, 128 S.W.3d at 227 ("A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement."); *see also Tittle*, 463 F.3d at 418 ("[A] court must determine whether the parties agreed to arbitrate the dispute in question."). Neither in the trial court nor before this

Court does Cox assert Knight's affidavit was insufficient to authenticate the arbitration agreement. *See* TEX. R. EVID. 803(6), 901(b)(10).

Cox's only objection raised in the trial court to Knight's affidavit was that "Ms. Knight has not provided any familiarity with Plaintiff's signature. Tex. R. Evid. 901." No further explanation of the objection was provided to the trial court when the parties argued the motion to compel arbitration. Nevertheless, the trial court sustained Cox's objection.[9]

On appeal, Cox did not explain or otherwise address her objection to the Knight affidavit except to say "ACE has failed to provide any evidence that the signature on the purported arbitration agreement is that of [Cox]. The Trial Court sustained [Cox's] objection to ACE's purported evidence that attempted [to] *establish* [Cox's] signature on the arbitration agreement." (emphasis added). Cox cites no case law, rules, or statutes to demonstrate that a general objection under Texas Rule of Evidence 901 that Knight "has not provided any familiarity with Plaintiff's signature" properly supports the trial court's ruling striking Knight's affidavit proof as to the arbitration agreement.[10] Accordingly, we conclude, on this record, ACE was not required to "establish" Cox signed the arbitration agreement. We further conclude, in the absence of any proper objection to Knight's affidavit evidence identifying and authenticating the arbitration agreement, ACE met its burden of authentication. *Wright*, 469 S.W.3d at 752.

We decide this part of ACE's issue in its favor.

### 2. Illusory Arbitration Agreement

In the first part of ACE's issue on appeal, ACE asserts the arbitration agreement is valid and enforceable. We address Cox's arguments in turn that the arbitration agreement is unenforceable.

---

[9] We note that the trial court did not sign an order sustaining Cox's objection to Knight's affidavit. Rather, the trial court announced Cox's objection, "is sustained . . . on the evidentiary consideration about the signature."

[10] We note that nowhere in this record does Cox contend she did not sign the arbitration agreement.

Cox's first argument is that the arbitration agreement is not enforceable asserting it is illusory because it "incorporated by reference ACE's Policies and Procedures Handbook. In its Policies and Procedures Handbook, ACE reserved 'the right, at any time, to modify, rescind or supplement any of the policies in the Policies and Procedures Handbook.'" That language which Cox alleges is incorporated by reference into the arbitration agreement is found in ACE's "Policy 100." ACE argues that "Policy 100" was inadvertently produced in discovery, was not in effect at any time during Cox's employment, was not incorporated by reference into the arbitration agreement, and should not be considered in determining whether the arbitration agreement is illusory. We agree with ACE.

Nothing in the record shows "Policy 100" was in effect at any time during Cox's employment. In fact, the declaration of Susan Wells, the Director of Human Resources of ACE, which was before the trial court during the hearing on the motion to compel, states "Policy 100" was not in effect during Cox's employment. Specifically, Wells's declaration states:

> At all times while Courtney Cox was employed by ACE, the ACE electronic employment policies menu listed Policy 100 as 'Introduction (Rev 11/11)" . . . When an ACE employee clicked the link on Policy 100, the blank Arbitration Agreement pulled up . . . At no time during Courtney Cox's employment was ["Policy 100"] part of ACE's electronic employment policies that were available to ACE's employees.

Cox did not object to Wells's declaration.

Further, exclusive of the "Policy 100" language, the arbitration agreement before us is a "stand-alone" agreement[11] and is not illusory because ACE cannot unilaterally avoid the promise to arbitrate. Instead, the agreement requires ACE to provide thirty days' written notice to its employees that the agreement is to be "modified or terminated by ACE." Also, the agreement states, "[a]ny modifications or terminations shall be prospective only and shall not apply to any

---

[11] A "stand-alone" arbitration agreement is one that "does not mention or incorporate by reference" other documents, such as an employee handbook. *In re 24R, Inc.*, 324 S.W.3d at 567.

claims or disputes that are pending in arbitration or that have been initiated by either party." That language does not make the arbitration agreement illusory because any modification or elimination of the arbitration agreement by ACE is prospective only. *See Budd*, 339 S.W.3d at 920 ("[E]ven if a party has the right to unilaterally modify or terminate an arbitration clause, if the modification or elimination of the clause does not apply retroactively so as to allow the party to avoid the promise to arbitrate, the arbitration clause is not illusory.").

On this record, we conclude the arbitration agreement does not incorporate "Policy 100" by reference, and the terms of that agreement do not give ACE the right to unilaterally avoid the agreement. We cannot agree the arbitration agreement is illusory as argued by Cox.

### 3. Confidentiality and Public Policy

Next, Cox contends the agreement is unenforceable because it requires confidentiality contrary to Texas public policy. First, we address Cox's argument that "the Texas Constitution has an Open Courts provision that mandates that disputes in Texas be open to all Texans, not just parties to the dispute." *See* TEX. CONST. art. I, § 13. The Texas open courts provision states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person *for an injury done him*, in his lands, goods, person or reputation, shall have remedy by due course of law." *Id.* (emphasis added). Historically, the supreme court has recognized three constitutional guarantees emanating from the open courts provision:

> First, courts must actually be open and operating, so that, for example, the legislature must place every county within a judicial district. Second, citizens must have access to those courts unimpeded by unreasonable financial barriers, so that the legislature cannot impose a litigation tax in the form of increased filing fees to enhance the state's general revenue. Finally, meaningful legal remedies must be afforded to our citizens, so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigant's' constitutional right of redress.

*See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993) (internal citations omitted).

Neither the language of the open courts provision nor the three guarantees of that provision identified by the supreme court address or support Cox's contention that "disputes in Texas be open to all Texans, not just parties to the dispute." On the contrary, Texas law is well-settled that "[a]rbitration of disputes is strongly favored," *Prudential Securities Inc*, 909 S.W.2d at 898, and that confidentiality is "critical to the success" of the arbitration process. *Knapp*, 281 S.W.3d at 173. Accordingly, we cannot agree with Cox that the open courts provision establishes a policy in Texas that prohibits communications made in connection with arbitration from remaining confidential.

Second, we address Cox's argument that "[t]he First Amendment and the public's right to monitor judicial performance presumptively require public trials, court proceedings and court records" and "[t]he United States and Texas both have a strong public policy that protects public trials and proceedings." This is not a case involving "judicial performance," or judicial "trials and proceedings." Arbitration is separate from the judicial process, and a party who "substantially invokes the judicial process to the other party's detriment" waives a contractual right to arbitrate. *In re Christus Spohn Health Syst. Corp.*, 231 S.W.3d 475, 478 (Tex. App.—Corpus Christi–Edinburg 2007, no pet.). Accordingly, policies related to the monitoring of "judicial performance" or judicial "trials and proceedings" are inapposite. We cannot agree with Cox that the First Amendment prohibits communications made in connection with arbitration from being confidential.

Third, we address Cox's argument that there is "a presumption of openness with regard to Court records, which includes discovery in civil cases." Cox cites Texas Rule of Civil Procedure 76a, entitled "Sealing Court Records" to support that argument. That rule defines court records to

mean "all documents of any nature filed in connection with any matter before any civil court[.]" TEX. R. CIV. P. 76a. Communications made in connection with arbitration are not "documents" that are "filed in connection with any matter before any civil court[.]" Accordingly, we cannot agree with Cox that Rule 76a prohibits communications made in connection with mediation from being confidential. We cannot agree with any of Cox's arguments that the arbitration agreement is unenforceable because it requires confidentiality.[12]

### 4. Application of the Texas Arbitration Act

Next, Cox argues, in the alternative, that, if there is a valid arbitration agreement, it is governed by the TAA, rather than the FAA. As a result, Cox argues, there is no enforceable arbitration agreement because Cox brought personal injury claims and her attorney failed to sign the arbitration agreement as required by the TAA.[13] ACE asserts the arbitration agreement is governed by the FAA. We agree with ACE.

The agreement between ACE and Cox states, "You and ACE agree that this Agreement shall be enforceable pursuant to and interpreted in accordance with the Federal Arbitration Act ('FAA')." That language establishes the parties intended the FAA to govern their agreement, and we will not look beyond that language. *See In re Rubiola*, 334 S.W.3d at 224. Further, even if we agreed with Cox that the TAA governs the arbitration agreement, the portion of that act upon which Cox relies to argue that the agreement is unenforceable has been preempted by the FAA and is "without effect." *Fredericksburg Care Co., L.P.*, 461 S.W.3d at 517 (holding the requirement of the TAA that an attorney sign a client's agreement to arbitrate a personal injury

---

[12] Cox asserts that "because the purported arbitration agreement requires the dispute to be conducted in a secret arbitration, it violates public policy and is unconscionable rendering it void and unenforceable." This is Cox's only reference to unconscionability. We concluded Cox's arguments regarding the confidentiality of arbitration are without merit. Cox does not articulate the basis for the argument as to unconscionability. She does not cite us to the record or any case law. Accordingly, this point is waived. *Radenovich v. Eric D. Fein, P.C. & Assocs.*, 198 S.W.3d 858, 861 (Tex. App.—Dallas 2006, no pet.) (the rules of appellate procedure require parties on appeal to present "a clear and concise argument for the contentions made, with appropriate citations to authorities and the record"). We will not analyze Cox's assertion that the terms of the agreement are unconscionable.

[13] Under Texas law, a personal injury claim may not be subject to arbitration unless the parties' agreement to arbitrate is signed by each party and her attorney. TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3).

claim is preempted by the FAA); *See Graber v. Fuqua*, 279 S.W.3d 608, 623 (Tex. 2009) ("Under the Supremacy Clause, if state law conflicts with federal law, the state law is preempted and 'without effect.'") (internal citations omitted). We cannot agree with Cox that the TAA applies to the parties' arbitration agreement, or that it renders the parties' arbitration agreement unenforceable.

### 5. Validity of the Arbitration Agreement and Cox's Claims

ACE asserts the strong presumption in favor of arbitration places the burden of overcoming the presumption on Cox, the party opposing arbitration. *See In re Rubiola*, 334 S.W.3d at 224; *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995). The only grounds asserted by Cox as to the invalidity of the arbitration agreement or whether her claims were outside the scope of that agreement were those we have addressed above and concluded are not meritorious. Accordingly, we conclude Cox has not met her burden to overcome the presumption in favor of arbitration in this case. *See In re Rubiola*, 334 S.W.3d at 224; *Cantella & Co., Inc.*, 924 S.W.2d at 944; *Prudential Sec. Inc.*, 909 S.W.2d at 898.

We decide ACE's sole issue in its favor.

### III. CONCLUSION

We reverse the portion of the trial court's order denying ACE's motion to compel arbitration, render judgment ordering arbitration of Cox's claims against ACE, and remand this case to the trial court for further proceedings consistent with this opinion, including the grant of an appropriate stay.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

151425F.P05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ACE CASH EXPRESS, INC., Appellant

No. 05-15-01425-CV      V.

COURTNEY COX, Appellee

On Appeal from the 95th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-15-05455.
Opinion delivered by Justice Lang. Justices Evans and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court denying ACE's motion to compel arbitration is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion. We **RENDER** judgment ordering arbitration of Cox's claims against ACE.

It is **ORDERED** that appellant ACE CASH EXPRESS, INC. recover its costs of this appeal from appellee COURTNEY COX.

Judgment entered this 9th day of August, 2016.